

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

**ENTERED**
**01/25/2013**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 12-32620** |
| UNITED DC, INC. | § | **CHAPTER  11** |
| | § | |
| Debtor(s). | § | **JUDGE ISGUR** |
| | § | |
| | § | |
| UNITED D.C., INC. | § | |
| | § | |
| Plaintiff(s), | § | |
| | § | |
| vs. | § | **ADVERSARY NO. 12-03365** |
| | § | |
| AN/WRI PARTNERSHIP, LTD. | § | |
| | § | |
| Defendant(s). | § | |

## <u>MEMORANDUM OPINION</u>

Defendant and Counter-Plaintiff AN/WRI Partnership, Ltd.'s ("AN/WRI") Motion for Summary Judgment (ECF No. 11) is granted.  Plaintiff United D.C., Inc.'s ("United D.C.") Motion for Final Summary Judgment (ECF No. 12) is denied.

### Background

This dispute concerns the ownership of two sections of railroad track located on or adjacent to property previously leased by United D.C. from AN/WRI.

On June 17, 1991, Debtor, United D.C. entered into a lease agreement ("Lease") with WRI/Lathrop, Inc.[1] for the lease of approximately 433,000 square feet of operating space located at 1200-1300 Lathrop Street, Houston, Texas ("Leased Premises").  (ECF No 12 at 4).  During the twenty-one year period in which Plaintiff occupied the Leased Premises, ten lease

---

[1] AN/WRI Partnership, Ltd. is a successor in interest to WRI/Lathrop, Inc.  (ECF No. 12 at 4).

amendments were executed.  (ECF No. 12 at 4).  Inbound product from United D.C.'s customers was transported to its operating facilities via rail car.  (ECF No. 12 at 4).  United D.C. installed and paid for rail track and related improvements, including a cross-over track utilized to connect various of the rail tracks ("Track Improvements").  (ECF No. 12 at 5).  The Track Improvements were used solely by United D.C. and include four separate rails, one located on the Leased Premises and three located adjacent to the Leased Premises.  (ECF No. 12 at 5).  Only two of the four rails are in dispute in this adversary proceeding.  (ECF No. 12 at 5).  It is undisputed that the single rail located on or closest to the Leased Premises and one of the three adjacent rails do not belong to United D.C.  (ECF No. 12 at 5).

The pertinent provisions of the Lease are as follows:

1.      Article 16.3:  "Tenant hereby agrees that ownership of the Track Improvements…shall vest in Landlord upon the termination of this Lease (regardless of the reason for such termination or expiration) if Tenant is in default of its obligations under this Lease upon such termination.  If Tenant is not in default of its obligations upon termination or expiration of this Lease, then ownership of all Track Improvements…shall remain vested in Tenant."

2.      Article 14.1:  "Failure or refusal by Tenant to timely pay Base Rent[2] or any other sum (including, without limitation, any Additional Rent) when due," constitutes an "Event of Default."

---

[2] Base Rent is defined in Article 1.1(h) of the Lease as: "From the Commencement Date through the earlier to occur of: (i) the completion of the portion of the Track Improvements to be constructed on the Leased Premises or (ii) October 1, 1991, Tenant shall pay the amount of $.17 per square foot per month of the Leased Premises occupied by Tenant in accordance with Section 2.3; commencing upon the earlier to occur of: (i) the completion of the portion of the Track Improvements to be constructed on the Leased Premises or (ii) October 1, 1991 and continuing through the Termination Date of the Original lease Term, Tenant shall pay $51,500.00 per month.  During the Option Term (if Tenant exercises the Extension Option), Tenant shall pay $57,850.00 per month.  The Base Rent amount was

3.     Article 15: "Neither acceptance of rent by Landlord nor failure by Landlord to complain of any action, non-action or default of Tenant shall constitute a waiver as to any breach of any covenant or condition of Tenant contained herein nor a waiver of any of Landlord's rights hereunder…No right or remedy of Landlord hereunder or covenant, duty or obligation of Tenant hereunder shall be deemed waived by Landlord unless such waiver be in writing, signed by Landlord."

United D.C. filed a voluntary chapter 11 bankruptcy petition on April 3, 2012 ("Petition Date").  (Case No. 12-32620, ECF No. 1).  United D.C. admits that as of the Petition Date it had not paid rent for April, which was due on April 1, 2012.  (ECF No. 1 at 5).  United D.C. asserts however that in the twenty-one years under the Lease, it frequently made rental payments after the first of the month and they were always accepted.[3]  (ECF No. 12 at 12).  AN/WRI concedes that rent was occasionally accepted after the first of the month.  (ECF No. 15 at 4).  On June 12, 2012, United D.C. filed a Motion to Reject Lease and Remove the Track Improvements (Case No. 12-32620, ECF No. 88).  On July 31, 2012 AN/WRI filed a proof of claim of $999,260.98 for prepetition rent and expenses and rejection damages.  (ECF No. 12 at 13-14). On August 3, 2012, the Court entered an order authorizing rejection of the Lease and required United D.C. to initiate an adversary proceeding to determine ownership of the Track Improvements.  (ECF No. 12 at 6).  On October 23, 2012, the Court entered an order allowing AN/WRI's administrative expense claim of $75,181.40 related to April 2012, post-petition rent. (ECF No. 12 at 13).

---

amended in the Fifth, Sixth, Eighth, Ninth and Tenth Amendments to Lease.  The Tenth Amendment to Lease contemplated that Base Rent for April 1, 2012 through March 31, 2015 would be $81,894.14 per month.

[3] United D.C. references a specific instance in 2003 when it was delinquent in Base Rent obligations totaling $140,050.00.  (ECF No. 12 at 13).  AN/WRI agreed to forgive the delinquent rent and reduce the monthly rent payments pursuant to the Fifth Amendment to Lease, Section 2.  (ECF No. 12 at 13).

United D.C. filed this adversary on August 6, 2012 seeking a declaratory judgment that it owns and can remove the Track Improvements.  (ECF No. 12 at 2).  AN/WRI filed its Answer and Counterclaims on September 9, 2012.  (ECF No. 8).  United D.C. filed its Answer to AN/WRI's Counterclaims on October 5, 2012.  (ECF No. 10).  The parties filed cross motions for summary judgment on October 31, 2012.  (ECF Nos. 11&12).  AN/WRI filed its response to United D.C.'s Motion on November 21, 2012.  (ECF No. 15).  United D.C. filed its response to AN/WRI's Motion on November 27, 2012.  (ECF No. 16).  AN/WRI filed its Reply on November 30, 2012.  (ECF No. 17).  United D.C.'s chapter 11 Plan was confirmed on January 2, 2013.  (Case No. 12-32620, ECF No. 221).

## Analysis

### A.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Fed. R. Bankr. P. 7056 incorporates Rule 56 in adversary proceedings.

A party seeking summary judgment must demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine dispute of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006).  A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

A court views the facts and evidence in the light most favorable to the non-moving party at all times.  *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009).  Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence.  *Malacara v.*

*Garber*, 353 F.3d 393, 405 (5th Cir. 2003).   A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact.[4]   Fed. R. Civ. P. 56(c)(1).   The Court need consider only the cited materials, but it may consider other materials in the record.   Fed. R. Civ. P. 56(c)(3).   The Court should not weigh the evidence.   A credibility determination may not be part of the summary judgment analysis. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).   However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.   Fed. R. Civ. P. 56(c)(2).

"The moving party bears the burden of establishing that there are no genuine issues of material fact."  *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008).   The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence that would entitle the movant to judgment at trial.  *Malacara*, 353 F.3d at 403.   Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact.  *Sossamon*, 560 F.3d at 326.   The non-moving party must cite to specific evidence demonstrating a genuine dispute.   Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986).   The non-moving party must also "articulate the manner in which that evidence supports that party's claim."  *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*,

---

[4] If a party fails to support an assertion or to address another party's assertion as required by Rule 56(c), the Court may (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if, taking the undisputed facts into account, the movant is entitled to it; or (4) issue any other appropriate order.  Fed. R. Civ. P. 56(e).

379 F.3d 293, 301 (5th Cir. 2004).  Even if the movant meets the initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.

If the non-movant bears the burden of proof of an issue, the movant must show the absence of sufficient evidence to support an essential element of the non-movant's claim. *Norwegian Bulk Transp. A/S*, 520 F.3d at 412.  Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case.  *Celotex*, 477 U.S. at 324.  The motion should be granted only if the non-movant cannot produce evidence to support an essential element of its claim.  *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

## B.  Track Improvement Ownership

United D.C. argues that in order for AN/WRI to assert an ownership interest in the Track Improvements there must be (1) a default under the Lease; and (2) a lease termination or expiration.  (ECF No. 12 at 9).  Both conditions have or will be met.

### a.  Default

AN/WRI holds an administrative expense claim of $75,181.40 for post-petition rent for April, 2012  United D.C. claims that this allowed claim means that it is not in default because AN/WRI will eventually be paid, but will merely be paid at a future date.  United D.C. argues that the Administrative Claim Order cures any default under the Lease.  Additionally, United D.C. argues that no prepetition balance is owed to AN/WRI because the $51,000.00 security deposit, plus accrued interest of $30,976.14 ($82,476.14 total) was applied toward prepetition rent in calculating AN/WRI's claim.  (ECF No. 12 at 14).  United D.C. argues there is actually a credit of $249.66 after applying the $82,476.14 to the prepetition rent owed.  (ECF No. 12 at 14).

If this were the only default under the Lease, United D.C. may have a valid argument that payment of the allowed administrative claim prior to the termination of the Lease and application of the security deposit would cure any default.   However, United D.C. rejected the Lease pursuant to 11 U.S.C. § 365.  As a consequence of rejection AN/WRI holds a $999,260.98 claim against the estate, equivalent to one year's rent pursuant to 11 U.S.C. § 502(b)(6).  To avoid being in default upon termination of the Lease, United D.C. would at least have to fully satisfy this $999,260.98 claim, something it will not do under its confirmed plan.[5]   United D.C.'s argument fails because under its Plan AN/WRI does not receive full satisfaction of its claim. AN/WRI will receive at most, satisfaction of the administrative expense claim and a portion of the rent[6] for one year of the remaining lease term.

United D.C. argues that the course of dealings between the parties results in a waiver of the requirement that rent be paid on the first of the month.  United D.C. asserts that in the twenty-one years under the Lease, it frequently made rental payments after the first of the month, and they were always accepted.   United D.C. argues that because the Court issued the Administrative Claim Order providing that the April, 2012 post-petition rent will be allowed as an administrative expense claim, AN/WRI will eventually be paid, but will merely receive payment late; and the course of dealings between the parties makes such a late payment acceptable.  Even assuming *arguendo* that the waiver argument is valid, the late payment of rent

---

[5]  The Court does not address whether United D.C. could cure its default by providing for AN/WRI's entire $999,260.90 claim rather than all amounts due according to the terms of the lease under applicable non-bankruptcy law.  United D.C. does not propose to pay the full $999,260.980 under its confirmed Plan.

[6]   The $999,260.90 claim is a general unsecured claim.  Under the plan confirmed in this case, the holders of general unsecured claims receive: "(i) a pro rata share of the $400,000 Cash Payment…and (ii) a pro rata share of any Net Litigation Proceeds received in connection with prosecution of the Reserved Avoidance Actions." (Case No. 12-32620, ECF No. 193 at 13).  The balance is discharged.

for April, 2012 is not the only issue under the Lease—United D.C. will never pay the full amount

owed under the Lease.  The Court will not address the waiver argument as it is moot.

###### b.      Termination

United D.C. argues that the lease has not terminated, and will not terminate because

rejection of an executory contract serves as a breach rather than a termination of a contract.

United D.C. is correct that rejection of the Lease is considered a breach rather than termination

of the Lease.  In 11 U.S.C. § 365 rejection, breach and termination are used differently, but not

inconsistently or interchangeably.  *Eastover Bank for Savings v. Sowashee Venture et al. (In the*

*Matter of Austin Dev. Co.)*, 19 F.3d 1077, 1082 (5th Cir. 1994).  The rejection of an executory

lease constitutes a breach, but does not mean that the lease has been terminated.  *Id*.  Rejection is

treated as a breach of the lease to preserve the rights of the non-debtor party by providing such

party with a prepetition claim.  *Id*.  Rejection does not mean that liabilities under a contract are

repudiated—rather the purpose of treating a rejection as a breach is to ensure that such liabilities

remain intact after rejection.  *Id*.

The Fifth Circuit's holding in *Eastover* does not mean that a rejected executory contract

*never* terminates.  A lease for a definite term terminates automatically by its own provisions at

the time specified in the lease.  *Hush Puppy of Longview, Inc. v. Cargill Interests, Ltd.*, 843

S.W.2d 120, 122 (Tex. App.—Texarkana 1992).  At the very latest, the lease will expire pursuant

to the Tenth Amendment to Lease, on March 31, 2015.[7]

There is no genuine issue of material fact.  The Lease will terminate at the very latest on

March 31, 2015 pursuant to its own terms.  Because United D.C. rejected the Lease it will be in

---

[7] United D.C.'s Plan was confirmed on January 2, 2013.  The plan is now effective.  Consequently, the automatic stay has terminated and the parties are subject to the discharge provision of chapter 11.  11 U.S.C. § 1141.  The Court need not determine whether the discharge injunction prevents AN/WRI from terminating the lease prior to March 31, 2015.

default upon termination. The plan having been confirmed, this event is now a certainty. Accordingly, under Article 16.3 of the Lease, AN/WRI owns the Track Improvements. Summary judgment is granted in favor of AN/WRI.

### Conclusion

The Court will enter a judgment consistent with this memorandum opinion.

SIGNED **January 25, 2013.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE